# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| NEHIA SHABA, | CASE NO. 07cv738-WQH-CAB |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

HAYES, Judge:

The matters before the Court are the Motion to Strike (Doc. 25-3) and the Motion for Summary Judgment (Doc. 21) filed by Defendant United States of America.

## BACKGROUND

*1. Procedural Background*

On April 23, 2007, Plaintiff Nehia Shaba filed a complaint against North County Health Services for professional and general negligence. (Doc. 1.) On June 21, 2007, Plaintiff amended her complaint to name the United States of America as the defendant, pursuant to the Federal Tort Claims Act and 42 U.S.C. § 233(g)(1)(A). (Doc. 3.) Plaintiff alleges that her doctor failed to obtain her informed consent before prescribing certain medication and that this failure caused Plaintiff to suffer severe liver damage and extreme emotional distress.

On September 26, 2008, Defendant filed a motion for summary judgment. (Doc. 21.) On October 22, 2008, Plaintiff filed an opposition to summary judgment. (Doc. 23.) On

1  October 27, 2008, Defendant filed a reply in support of summary judgment (Doc. 25) and
2  concurrently filed a motion to strike (Doc. 25-2) evidence submitted with Plaintiff's opposition
3  to the motion for summary judgment.  The Court heard oral argument from the parties on
4  November 3, 2008.

5  *2. Factual Background*

6        On April 28, 2004, Plaintiff went to North County Health Services (NCHS), a federally
7  funded health care clinic, for a routine physical.  (Pl.'s Decl. ¶ 1.)  At the time of the visit,
8  Plaintiff was 32 years old and married with three children.  (Def.'s Notice of Lodgment in
9  Support of Summary Judgment Ex. K at 8.)  Dr. Patricia Chu of NCHS examined Plaintiff and
10 ordered a PPD skin reading to test for the presence of tuberculosis bacteria.  (Def.'s NOL Ex.
11 A.)  On April 30, 2004, Plaintiff was advised that her PPD skin reading was positive and given
12 a referral for a chest x-ray to determine whether the tuberculosis was active or latent.  (Def.'s
13 NOL Ex. B.)  Plaintiff was advised that all household members should have a PPD reading as
14 soon as possible.  (*Id*.)  Plaintiff did not follow up with the chest x-ray and her family members
15 were not tested at that time.  (Pl.'s Decl. ¶ 1.)

16       On November 9, 2005, Plaintiff returned to NCHS.  (Def.'s NOL Ex. C.)  Plaintiff was
17 evaluated by a nursing student acting under the direction of Dr. Chu.  (*Id*.)  Plaintiff was given
18 a second chest x-ray referral and a prescription for isoniazid (INH), an antibiotic used to
19 prevent latent tuberculosis from becoming active in the future.  (Def.'s NOL Ex. E.)  On
20 November 10, 2005, Plaintiff had a chest x-ray performed at Radiology Medical Group, Inc.
21 (Def.'s NOL Ex. D.)  On November 16, 2005, Plaintiff received a telephone call at her home
22 from Dr. Chu, who informed Plaintiff that the results of the chest X-ray were normal,
23 indicating that Plaintiff had latent tuberculosis. (Pl.'s Decl. ¶ 2.)  Dr. Chu instructed Plaintiff
24 to begin the INH treatment.  (*Id*.)

25       On November 17, 2005, Plaintiff began taking 300 mg of INH per day as prescribed.
26 (*Id*.)  On December 14, 2005, Plaintiff returned to NCHS complaining of nausea and weakness.
27 (Def.'s NOL Ex. H.)  Dr. Chu examined Plaintiff and advised her to stop taking the INH in
28 light of her symptoms.  (*Id*.)  Dr. Chu ordered a series of tests and noted in the medical record

1 that she would call Plaintiff with the results. (*Id.*)

2 On December 16, 2005, Plaintiff returned to NCHS complaining that she had not been able to eat in a week, that she was drinking very little, and that she was constantly nauseous. (Def.'s NOL Ex. I.) Dr. Chu noted in the medical record that Plaintiff was jaundiced and that she was likely suffering from an inflammation of the liver known as INH hepatitis. (*Id.*) Dr. Chu ordered a hepatitis A, B, and C panel and advised Plaintiff to get rest and drink fluids. (*Id.*) Dr. Chu scheduled a follow up appointment for the coming Monday, December 19, 2005, and advised Plaintiff to go to the emergency room should her condition worsen during the weekend. (*Id.*)

10 On December 17 and 18, 2005, Plaintiff went to the emergency room at Scripps Memorial Hospital due to fainting spells, weakness and nausea. (Pl.'s Decl. ¶ 5.) Plaintiff returned to NCHS on Monday, December 19, where she was again examined by Dr. Chu and referred to the emergency room at Scripps Memorial Hospital. (Def.'s NOL Ex. J.) On December 20, 2005, Plaintiff was transferred to Scripps Green Hospital where she was diagnosed and treated for INH hepatitis. (Def.'s NOL Ex. L. at 8-11.) Plaintiff was discharged on December 24, 2005 and has made a full recovery. (*Id.* at 11, 14.)

17 *3. Expert Witness Reports and Deposition Testimony*

18 During discovery, Defendant's expert witness, Dr. Robert Neveln, reviewed the medical records and deposition testimony of Plaintiff and issued an initial report which is dated July 12, 2008. (Def.'s NOL Ex. L.) Dr. Neveln stated in his report that a patient with latent TB who does not take INH faces a 10% lifelong risk that the TB will become active in the future. (*Id.* at 25.) Dr. Neveln opined that the risk that Plaintiff would develop active TB was greater than 10% because the incidence peaks in women between the ages of 25 and 34 years and Plaintiff was 32 at the time. (*Id.*) The report stated that between 0.001% - .00001% of individuals who take INH to treat latent TB develop INH hepatitis, which is generally a treatable condition that does not cause permanent liver damage. (*Id.* at 26.) With respect to the propriety of Dr. Chu's decision to treat Plaintiff with INH, Dr. Neveln stated:

28  I feel that the medical providers at North County Health Services and specifically Dr. Chu did make proper decisions in advising INH therapy in this

>patient. Indeed, by records the patient's current physicians are considering, in spite of the INH hepatitis occurring, of reinstituting INH therapy at some time in the future. The risks of Ms. Shaba of not instituting [INH] therapy were and are significant, given her marked positive skin test (20 mm) in 2004 and her age.

(*Id.* at 29.) Dr. Neveln stated that a review of the medical records reveals that Plaintiff's hepatitis was entirely resolved by the end of January 2006. (*Id.* at 26.)

Plaintiff testified during her deposition that she would not have taken INH to treat her latent TB if Dr. Chu had informed her about the risk of hepatitis, nausea and fatigue associated with the medication. (Def.'s NOL Ex. K. at 189.) Plaintiff's expert witness, Dr. Richard Danson, reviewed the medical records of Plaintiff and issued an initial report which was provided to counsel for Defendant on July 18, 2008. (Def.'s NOL to Reply Brief Ex. A.) In the report, Dr. Danson stated that in his opinion, "it was very important for Mrs. Nehaia [sic] to have received informed consent regarding taking INH. If she did not receive this, I believe it was negligent and below the standard of care." (*Id.* at 1.) Dr. Danson opined that "the medication [INH] is notorious for causing severe hepatitis, and the risks of this occurring increase as the age of the patient increases. In fact, at age 35, it is deemed inappropriate to take for TB prophylaxis, for the risks of developing hepatitis outweigh the potential benefit." (*Id.*)

On August 22, 2008, Defendant took Dr. Danson's deposition. During the deposition, the following line of questioning took place between Dr. Danson and counsel for defendant:

>Q. So Doctor, do you have an opinion as to whether or not it was appropriate to prescribe INH to Ms. Shaba at all?
>A. It was appropriate. She was below the age of 35 when it was prescribed.
>Q. What was your understanding of what her age was at the time she was prescribed INH?
>A. Age 32.
>Q. And, therefore, it was appropriate to prescribe her INH?
>A. Yes.

(Def.'s NOL Ex. M. at 98-99.) Dr. Danson also testified that he had provided all of his expert opinions regarding the case to counsel for Defendant and that he "really [did not] believe [he] had] any other opinions on this case." (*Id.* at 100-101.)

In a declaration submitted with Plaintiff's opposition to Defendant's motion for summary judgment, Dr. Danson states that "while I did testify in deposition that the INH prescription was appropriate, appropriate is far different from necessary" and that it was his


opinion that it was "not a medical necessity to treat the latent TB with Isoniazid." (Danson Decl. ¶ 2.) Dr. Danson states that he was "not asked in deposition whether it was necessary to prescribe INH to Ms. Shaba, but only whether it was an appropriate way to treat latent TB. I was also not asked whether there were alternative appropriate means of treating the latent TB condition." (*Id*. ¶ 6.) Dr. Danson further opines in the declaration that "the chance of latent TB becoming active is extremely low; statistically 1:10,000 or, in other words, 0.0001%. In fact, there are millions of people in this world who have latent TB who test positive but never receive treatment and which never develop active TB." (*Id*. ¶ 3.) Dr. Danson concludes that it would have been "appropriate to leave the condition alone and not treat it at all with patient monitoring at reasonable intervals." (*Id*. ¶ 7.)

## DISCUSSION

*1. Motion to Strike*

Defendant objects to, and moves to strike the entire declaration of Dr. Richard Danson. (Def.'s Mot. to Strike at 1). Defendant asserts that the opinions contained in Dr. Danson's declaration were not timely disclosed in his initial expert report, or at his deposition. (*Id*.)

On January 18, 2008, the Magistrate Judge issued a scheduling order requiring the parties' expert witness reports to be disclosed by July 17, 2008. (Doc. 14.) The order included the following admonition regarding the disclosure deadlines:

> 3. **Except as provided in the paragraph below, any party that fails to make these disclosures shall not, absent substantial justification, be permitted to use evidence or testimony not disclosed at any hearing or at the time of trial. In addition, the Court may impose sanctions as permitted by Fed. R. Civ. P. 37(c).**
> 4. Any party, through any expert designated, shall in accordance with Fed. R. Civ. P. 26(a)(2)(C) and Fed. R. Civ. P. 26(e), supplement any of its expert reports regarding evidence intended solely to contradict or rebut evidence on the same subject matter identified in an expert report submitted by another party. Any such supplemental reports are due on or before **July 31, 2008**.

(Scheduling Order at 2) (emphasis in original). On August 14, 2008, the parties jointly moved for an extension of time to complete discovery. (Doc. 18.) The Magistrate Judge granted the motion, extending the deadline for supplemental expert disclosures to September 12, 2008, and extending the discovery deadline to September 19, 2008. (Doc. 19.)

Rule 26(a)(2) requires a party to disclose the identity of expert witnesses accompanied

by a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). A party has a duty to disclose any additions or changes to information included in the expert report and given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). Supplemental expert reports must be disclosed at least 30 days before trial unless the court orders otherwise. Fed. R. Civ. P. 26(a)(3).

Fed. R. Civ. P. 37(c) provides for the exclusion of an expert witness or expert evidence offered by a party who has not complied with the Rule 26 disclosure requirements. Rule 37(c) states:

> (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c). "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56." Fed. R. Civ. P. 37(c)(1) advisory committee's note (1993). "Even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden to show substantial justification or harmlessness lies with the party facing Rule 37(c) sanctions. Fed. R. Civ. P. 37(c); *Yeti by Molly Ltd.*, 259 F.3d at 1107. The Ninth Circuit has expressly upheld a district court's exclusion of evidence submitted in opposition to a motion for summary judgment where the party did not comply with the requirements of Rule 26. *Wong v. Regents of the University of California*, 410 F.3d 1052 (9th Cir. 2005); *see also Luke v. Emergency Rooms, P.S.*, 2008 U.S. Dist. LEXIS 10516 at \*\*12-15 (granting summary judgment for defendant in medical malpractice case, where the only expert opinions relevant to causation were introduced for the first time in opposition to summary judgment).

In this case, Plaintiff was required by Rule 26 and the scheduling order to disclose any additions or changes to the information included in Dr. Danson's report and given at his

deposition by September 12, 2008. However, the supplemental declaration of Dr. Danson was not submitted until October 22, 2008 in opposition to summary judgment. The supplemental declaration was over a month past the deadline in violation of both Rule 26 and the Court's scheduling order. Pursuant to Rule 37(c), Plaintiff "is not allowed" to rely on the supplemental declaration to defeat summary judgment "unless the failure [to comply with Rule 26] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden to show substantial justification or harmlessness lies with Plaintiff. *See Yeti by Molly Ltd.*, 259 F.3d at 1107.

Plaintiff has not offered any justification for failing to comply with Rule 26 and the scheduling order in writing or at oral argument. Contrary to Rule 37(c) and the clear admonition from the Magistrate Judge, Plaintiff submitted the untimely supplemental declaration with her opposition to summary judgment without any explanation, let alone a substantial justification. When asked at oral argument why the opinions were not included in the initial report, Plaintiff again had no explanation. Moreover, Plaintiff's untimely disclosure is not harmless: allowing Plaintiff to disregard the deadline for disclosing supplemental expert opinions would at a minimum require the Court to reopen discovery and change the deadlines set by the scheduling order. In the context of Rule 37(c), "[d]isruption to the schedule of the court and other parties is not harmless. Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to." *Wong*, 410 F.3d at 1062. The Court concludes that Plaintiff has not carried her burden to show that the failure to comply with Rule 26 and the schedule of the Court was either substantially justified or harmless. The motion to strike the declaration of Dr. Danson in its entirety is GRANTED. The Court will only consider the testimony, information and opinions provided by Dr. Danson which were disclosed prior to the September 12, 2008 disclosure deadline.

*2. Motion for Summary Judgment*

Defendant asserts that summary judgment is appropriate because Plaintiff has failed to demonstrate an objective causal relationship between the alleged lack of informed consent and

the harm that Plaintiff suffered. (Def.'s Summ. J. Mot. at 1.) Defendant asserts that "the evidentiary record discloses that Plaintiff had tuberculosis, that tuberculosis is potentially fatal and communicable, that the medication prescribed was medically appropriate and rarely causes complications, and that no reasonable person with tuberculosis would have refused to take that medication." (*Id*.) Defendant contends that the "serious" risk that Plaintiff's latent TB would become active coupled with the "minuscule" risk of developing hepatitis from taking INH would lead a reasonably prudent person in Plaintiff's position to consent to INH treatment if adequately informed of the risks. (*Id*.) Defendant contends that the Plaintiff's deposition testimony that she would have declined treatment for her TB if she had known the risk of liver problems from INH must be "discounted in view of the seriousness of TB, the minuscule risk posed by INH, and the fact that it is the sole appropriate treatment for latent TB." (*Id*. at 9.)

In opposition to summary judgment, Plaintiff contends that "there is enough objective evidence to show that a reasonable person in plaintiff's position would have denied consent to the medication prescription." (Pl.'s Opp. at 2.) Plaintiff contends "that she is able to produce enough evidence to show that there are triable issues of material fact." (*Id.* at 10.) Plaintiff asserts that the opinions provided by Dr. Danson in his declaration create triable issues of fact with respect to causation under a theory of informed consent. (*Pl.'s Oppn.* at 9.)

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. "The moving party is entitled to a judgment as a matter of law because the nonmoving party has

failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

Once the moving party shows that there is an absence of evidence to support the non-moving party's case, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 325 (quoting Fed. R. Civ. P. 56(e)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 253. The court "may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

Under California law, "a physician is under a legal duty to disclose to the patient all material information . . . needed to make an informed decision regarding a proposed treatment." *Arato v. Avedon*, 5 Cal. 4th 1172, 1186 (Cal. 1993) (citing *Cobbs v. Grant*, 8 Cal. 3d 229, 243 (Cal. 1972)). "To fulfill the duty of disclosure to a patient, a physician must disclose in lay terms (1) the available choices with respect to proposed therapy and (2) the dangers inherently and potentially involved in each such as will enable the patient to make an intelligent choice." *Hanna v. United States*, 845 F. Supp. 1390, 1392 (E.D. Cal. 1993) (citations omitted). If the failure of the physician to fulfill the duty of disclosure is the actual cause of the injury to the plaintiff, the physician is subject to liability in negligence. *Cobbs*,

1  8 Cal.3d at 245.  "Such causal connection arises only if it is established that had revelation
2  been made consent to treatment would not have been given." *Id.*

3  In *Cobbs v. Grant*, the Supreme Court for the State of California explained that an
4  objective test applies to discover the existence of a causal relationship between the physician's
5  failure to inform and the injury to the plaintiff.  The Court stated:

> The patient-plaintiff may testify on this subject but the issue extends beyond his credibility.  Since at the time of trial the uncommunicated hazard has materialized, it would be surprising if the patient-plaintiff did not claim that had he been informed of the dangers he would have declined treatment. Subjectively he may believe so, with the 20/20 vision of hindsight, but we doubt that justice will be served by placing the physician in jeopardy of the patient's bitterness and disillusionment. Thus an objective test is preferable: i.e., what would a prudent person in the patient's position have decided if adequately informed of all significant perils.

*Cobbs*, 8 Cal. 3d at 245.  To succeed on a negligence claim based on a lack of informed consent, the plaintiff is required to prove by a preponderance of the evidence that a prudent person in the plaintiff's position would not have consented to the treatment if he or she had been properly informed of the risks.  *Id.*

In this case, the experts for Plaintiff and Defendant both testified that it was appropriate to treat Plaintiff's latent TB with a prescription for INH.  (*Pl.'s Oppn.* at 9.)  The expert medical evidence in the record demonstrates that there is a 10% lifelong risk that latent TB will become active in the future if not treated with INH.  (*Def.'s Summ. J. Mot.* Ex. L - Def.'s Expert Report at 25.)  This risk increases in women between the ages of 25 and 34.  (*Id.*)  The evidence further demonstrates that between 0.001% - .00001% of individuals who take INH to treat latent TB develop INH hepatitis, which is generally a treatable condition that does not cause permanent liver damage.  (*Id.* at 26.)  The evidence in the record demonstrates that Plaintiff faced a markedly higher risk of developing TB without INH than of developing hepatitis with INH.  The Court concludes that Defendant has satisfied its initial summary judgment burden to show an absence of evidence establishing that a prudent person in the plaintiff's position would not have consented to the treatment if he or she had been properly informed of the risks.

As the non-moving party, the burden shifts to Plaintiff to designate specific facts

1 showing that there is a genuine issue for trial. Plaintiff testified at her deposition that she
2 would not have taken INH if she had been informed of the risk of hepatitis. (*Def.'s Summ. J.*
3 *Mot.* Ex. K - Pl.'s Dep. at 189.) However, Plaintiff has presented no objective evidence to
4 contradict the expert opinion of Dr. Neveln that a patient in Plaintiff's position faced between
5 a 0.001% - 0.0001% risk of developing hepatis if she took the INH, but over a 10% risk that
6 her latent TB would become active in the future if she did not take INH. Viewing the evidence
7 in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not come forward
8 with evidence sufficient to establish that a prudent person in her position would not have
9 consented to INH treatment. Defendant is entitled to a judgment as a matter of law because
10 Plaintiff has failed to make a sufficient showing on an essential element of her case with
11 respect to which she has the burden of proof. *Celotex*, 477 U.S. at 323.

## CONCLUSION

13 IT IS HEREBY ORDERED that Defendant's motion for summary judgment (Doc. 21)
14 is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant and
15 against Plaintiff.

17 DATED: February 23, 2009

**WILLIAM Q. HAYES**
United States District Judge